LaRue v. Chief Oil

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-354-CV

JOSH LARUE APPELLANT

V.

CHIEF OIL & GAS, L.L.C., BIG D  APPELLEES

DOZER SERVICE INC., SMITH OIL 

FIELD & ENVIRONMENTAL 

SERVICES, INC., AND SPA 

DRILLING, L.P. 

------------

FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

I.  Introduction

In six points Appellant challenges the trial court’s granting of summary judgment to all Appellees, and in a single cross point, Appellees assert that Appellant’s appeal is untimely and request this court to dismiss the appeal.  We will affirm.

II.  Factual Background

Chief Oil & Gas, L.L.C. (Chief) is a natural gas producer that, in November of 2000, completed a well on the Chief Pent Mineral Lease (the Lease), adjacent to FM 718 in Tarrant County.  SPA Drilling, L.P. (SPA) “drilled up mud” on the Lease.  After the well was completed SPA removed its equipment from the site around November 13 and 14, 2000, on flat bed trailers.  During the removal process the well site was very muddy, and Big D Dozer Service, Inc. (Big D) pulled equipment away from the drilling site and toward the highway.   An eight-foot wide gravel road existed from the entrance to the well.  It is undisputed that mud
(footnote: 1) from the equipment move got on FM 718, and as a result, Chief instructed Smith Oil Field & Environmental Services, Inc. (Smith Oil) to clean the highway with a backhoe as the drilling equipment was removed.  Smith Oil additionally removed two casings from the site at the same time, which also caused mud to be on the highway.

On November 20, 2000, two days after the drilling equipment was removed, a technician for a utility company, Dan Estelle, was traveling south on FM 718 on the opposite side of the road from the Lease at about 55 m.p.h.  Approximately eighty yards in front of Estelle’s vehicle, Josh LaRue (LaRue) was driving his pickup, also southbound and also traveling about 55 m.p.h.  It was foggy and rainy, and the roads were slick because rain had washed over the road for several days.  When LaRue’s pickup was about two hundred yards north of the Lease entrance, Estelle saw the rear end of LaRue’s pickup cross the highway’s center stripe; then the pickup slid off the road, crossed a bar ditch, became airborne, and struck a utility pole on the driver’s side before coming to rest on its side with the driver’s door facing upward.  Estelle attempted to slow his heavy, large, six-wheeled “bucket truck,” but it slid sideways when he touched the brakes, and he had to “coax” his truck off the road into a bar ditch to come to a controlled stop.  Estelle got out of his truck, approached LaRue’s pickup, and saw that LaRue was “in pretty bad shape.”  He thought LaRue would die before he could be removed from his pickup.  About fifty minutes later, paramedics arrived and were able to cut open the top of the pickup and transport LaRue to a hospital.  It is not disputed that he was seriously injured.

Estelle could not say that he saw mud in the southbound lane at the accident site, but he said he did see some small dirt clods on the northbound side of the road that were smashed onto the asphalt, each looking like “a black pancake.”  Estelle had previously witnessed a backhoe and some people with shovels and brooms getting mud clods off the highway, and “they were spread out a great distance out here north of that entrance [to the Lease].”  According to Estelle, the mud was on both sides of the road near the entrance to the Lease and continued “a pretty good distance out there because the trucks are so long and everything, they have to cross over, you know, to be able to get out of that entrance there.”

It is LaRue’s contention that the mud on the highway caused the accident and that it was left there when the drilling rig and casing were removed from the Lease through the actions of Chief, SPA, and Big D.  Further, LaRue alleges that Smith Oil failed to clean the road properly after the mud accumulated on the road.  Smith Oil’s equipment operator, Raymond Martinez (Martinez), testified that he cleaned FM 718 as far as the mud was tracked immediately after each truck left the Lease and that he did not leave the work site each day until all the mud was removed.  His supervisor, Scotty Duncan (Duncan), testified that after November 14 and until the day of the accident, there was no activity on the Lease, but this testimony was disputed by Estelle who said he saw trucks larger than pick-ups leaving the Lease the day before the accident.  The cleanup procedure was observed by David Oster (Oster), an inspector with the Texas Department of Transportation (TX Dot), who approved the job when the cleanup was complete.  He testified that he traveled north from the Lease past the future accident site on November 16 and did not see any mud in the southbound lane and, in fact, that he would have turned around and had Martinez clean the road had he seen any mud.  On the other hand, LaRue obtained affidavits from two witnesses, Brian Price and Jason Rogers, who arrived at the accident a short time after the wreck, and who stated that mud from the lease was present at the accident site on both sides of the road and was traceable to the Lease entrance.  As a result of the accident, LaRue sued Chief, SPA, Big D, and Smith Oil under various negligence theories.

III.  Procedural Background

Appellees Chief, SPA, Big D, and Smith Oil all filed no-evidence motions for summary judgment.  The trial court signed orders on July 21, 2003 granting summary judgment in favor of Big D, Chief Oil, and SPA, and on July 24 signed another order granting summary judgment in favor of Smith Oil.  Finally, on October 28, the trial court entered a “final judgment.”  It is from the summary judgments that LaRue appeals.  

IV.  Request to Dismiss the Appeal

Appellees argue in their cross-point that this appeal should be dismissed because the notice of appeal was untimely filed on December 1, 2003, which would result in a lack of jurisdiction and dismissal.  
Davies v. Massey
, 561 S.W.2d 799, 801 (Tex. 1978) (orig. proceeding).  They argue that after the final summary judgement was signed on July 21, 2003, the derivative claims for contribution and indemnity were extinguished by the granting of their motions for summary judgment, resulting in the commencement of the running of the appellate timetable from that July 21 date. 

However, our Texas Supreme Court does not agree.  “An order that adjudicates only the plaintiff’s claims against the defendant does not adjudicate a counterclaim, cross-claim, or third party claim.”  
Lehmann v. Har-Con Corp.
, 39 S.W.3d 191, 205 (Tex. 2001).  Apparently, Appellees also believed that to be the case because they subsequently filed notices of non-suit of their cross-actions with the trial court in August 2003, which notices are now argued to be nullities.  Based on the language in 
Lehmann
 cited above, we hold that there was not a final judgment until October 28, 2003, when the trial court signed a “final judgment,” disposing of the last non-suit and stating that “all claims in this case have been addressed and disposed of and the Court hereby signs a final judgment.  This instrument is a final judgment as contemplated in 
Lehmann
 
v. Har-Con Corp.
, 39 S.W.3d 191 (Tex. 2001), and is subject to appeal.”  Therefore, the notice of appeal filed by LaRue on December 1, 2003 was timely (due to holiday courthouse closings).  
Tex. R. App. P.
 26; 
Tex. R. Civ. P.
 4.  This cross-point is overruled. 

V.  Adequate Time for Discovery

LaRue asserts in his sixth point that the summary judgments should be reversed because there was an inadequate time allowed for discovery to address the no-evidence motions for summary judgment.
  Specifically, LaRue complains that he was unable to depose four witnesses who were at the scene of the accident, key fact witnesses who were employees of each of the Appellees, and a corporate representatives of each Appellee.  He also complains that Appellees filed their motions only seven to eight months after the last Appellee filed its original answer. 

In determining whether there has been adequate time for discovery, certain factors warrant consideration:  (1) the nature of the case, (2) the nature of the evidence needed to address the no-evidence motion, (3) how long the case has been on file, (4) how long the no-evidence motion has been on file, (5) whether the party filing the no-evidence motion has requested stricter deadlines for discovery, (6) the amount of discovery that has occurred, and (7) the nature of the discovery deadlines in place.  
Rest. Teams Int’l, Inc. v. MG Sec. Corp
., 95 S.W.3d 336, 339 (Tex. App.—Dallas 2002, no pet.).  Chief filed its original answer on December 27, 2001 in response to LaRue’s original petition, Smith answered on April 25, 2002, and Big D answered on May 8, 2002, the latter two in response to LaRue’s first amended petition, and finally SPA answered on September 30, 2002 in response to LaRue’s second amended petition.  Likewise, the no-evidence motions were filed by SPA on April 24, 2003, by Chief on May 19, 2003, by Big D on May 22, 2003, and by Smith on May 28, 2003.  

It is instructive to turn to the summary judgment rule itself. The comment to Rule 166a states, “A discovery period set by pretrial order should be adequate opportunity for discovery unless there is a showing to the contrary, and ordinarily a motion under paragraph (i) would be permitted after the period but not before.”  
Tex. R. Civ. P.
 166a cmt.  Here, an 
agreed
 scheduling order was signed January 21, 2003 and provided that dispositive motions should be filed by June 23, 2003, with June 30 being the deadline for the completion of all discovery, which was approximately one year and eight months following the original filing of the case on October 5, 2001.  The discovery deadline had passed before the summary judgment motions were heard and ruled on.

We review a trial court’s determination that there has been an adequate time for discovery on case-by-case basis under an abuse of discretion standard,  
Wolfe
 
v. FairBanks Capital Corp
., No. 2-03-100-CV, 2004 WL 221212 at *1 (Tex. App.—Fort Worth Feb. 5, 2004, no pet.) (not designated for publication), bearing in mind that a trial court abuses its discretion only when it acts in an unreasonable and arbitrary manner or when it acts without reference to any guiding rules or principles.  
E.I. du Pont de Nemours & Co. v. Robinson
,  923 S.W.2d 549, 558 (Tex. 1995).  A court of appeals may not reverse a trial court’s ruling under this standard merely because it disagrees with the decision.  
Id
.  In this case, LaRue had propounded and received responses to written discovery; the depositions of LaRue, Sheriff Tramel, Oster, Estelle, Mr. Taylor of the EMS crew, Mr. Thompson, Chief Oil’s vice president, Mr. Martinez, Mr. Brown, and Mr. Duncan of Smith Oil, had been taken; LaRue had received a continuance on June 20, 2003 to obtain sworn statements; three witness affidavits had been obtained by LaRue; the case had been on file since October 2001; and the discovery period had ended per the 
agreed
 scheduling order—all prior to the hearing on the motions for summary judgment.  Based on the forgoing, this court cannot say that the trial court abused its discretion by not agreeing that LaRue had inadequate time for discovery prior to the no-evidence motions for summary judgment being heard.  LaRue’s sixth point is overruled.  We now turn to the merits of the no-evidence motions and rulings thereon.

VI.  Standard of Review

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense.  
Tex. R. Civ. P.
 166a(i).  The motion must specifically state the elements for which there is no evidence.  
Id.
; 
Johnson v. Brewer & Pritchard, P.C., 
73 S.W.3d 193, 207 (Tex. 2002).  The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact.  
See
 
Tex. R. Civ. P.
 166a(i) & cmt.; 
S.W. Elec. Power Co. v. Grant, 
73 S.W.3d 211, 215 (Tex. 2002).

We review the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered.  
Johnson
, 73 S.W.3d at 197; 
Morgan v. Anthony
, 27 S.W.3d 928, 929 (Tex. 2000).  If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper.  
Moore v. K Mart Corp.
, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied).  
Because the trial court, in granting the no-evidence motion for summary judgment, did not articulate the grounds therefor, the judgment of the trial court will be upheld on any ground contained in the no-evidence motions for summary judgment.  Consequently, the nonmovant on appeal must negate all grounds on which the trial court could have relied in granting the summary judgment.  
Harwell v. State Farm Auto. Mut. Ins. Co.
, 896 S.W.2d 170, 173 (Tex. 1995).  

A no-evidence point will be sustained when (a) there is complete absence of evidence of a vital fact, (b) the court is barred by rules of law or evidence from giving weight to [all the] evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.

Lampasas v. Spring Ctr., Inc
., 988 S.W.2d 428, 432 (Tex. App.—Houston [14th Dist.] 1999, no pet.).  

VII.  Was the Issue of Duty Before the Court?

In his first point, LaRue asserts that because Appellees did not assert specifically in their no-evidence motions for summary judgment that they owed no duty to LaRue, summary judgment cannot be affirmed on that ground  because this issue was not properly before the trial court and is therefore not before this court.  
Cadenhead v. Hatcher
, 13 S.W.3d 861, 863 (Tex. App.—Fort Worth 2000, no pet.); 
Shannon v. Law-Yone,
 950 S.W.2d 429, 438 (Tex. App.—Fort Worth 1997, pet. denied).  Appellees respond that a portion of each of their motions stated that “after adequate time for discovery Plaintiff cannot provide any evidence to support the elements of his claims” and argue that this is adequate notice that Appellees were asserting, for summary judgment purposes, that each owed no duty to LaRue, as duty is an element of LaRue’s negligence claim.  The comment to Rule 166a states that “[t]he motion must be 
specific
 in challenging the evidentiary support for an 
element 
of a claim or defense” and further notes that “general no-evidence challenges to an opponent’s case” are insufficient.  
Tex. R. Civ. P.
 166a cmt. (emphasis supplied).  Rule 166a(i) itself states that “[t]he motion must state the 
elements
 as to which there is no evidence.”  
Tex. R. Civ. P.
 
 
166a(i) (emphasis supplied).

The elements of a negligence cause of action are (1) legal duty owed by one party to another, (2) a breach of that duty, and (3) damages proximately caused by that breach.  
Greater Houston Transp. Co. v. Phillips
, 801 S.W.2d 523, 525 (Tex. 1990).  The existence of a duty is a question of law for the court to decide based on the specific facts of the case.  
Mitchell v. Missouri-Kansas-Texas R.R. Co.
, 786 S.W.2d 659, 662 (Tex.), 
cert. denied
, 498 U.S. 896 (1990).  The question presented to this court is whether stating that there is no evidence to support the elements of the plaintiff’s claims is of sufficient specificity to support an assertion that there is no evidence of a duty owed by the defendant/movant to the plaintiff under the negligence claim.  Examining Appellees’s motions for summary judgment, each asserts in its respective paragraph III, entitled “No Evidence Exists That The Defendant Did Or Failed To Do Anything Which Proximately Caused Plaintiff Damages,” that

After adequate time for discovery, Plaintiff cannot provide any evidence to support the elements of his claims.  Defendant, Chief Oil & Gas [and respectively in their motions, Smith Oil, Big D, and SPA] is fully entitled to summary judgment as a matter of law because under Plaintiff’s negligence cause of action, there is no evidence of the following elements:

1. That Movant tracked mud and/or oil onto FM 718;

2. That Movant created a hazardous condition;

3. That Movant was responsible for the transportation of the oil rig;

4. That the mud and/or oil proximately caused Plaintiff’s injuries; and 

5. That Movant was responsible for the cleaning of FM 718.

Based on the foregoing, and recalling that “[t]he specificity requirement is designed to avoid conclusory no-evidence challenges to an opponent’s cause of action,”  
In re Mohawk Rubber Co.
, 982 S.W.2d 494, 498 (Tex. App.—Texarkana 1998, orig. proceeding), we find no specific allegation that there was no evidence of a duty owed by Appellees to LaRue.  

The summary judgment pleading rules . . . are consistent with the express language of Rule 166a(c) requiring that the motion for summary judgment state the specific grounds therefor and further the purpose of 166a(c) to provide adequate information for opposing the motion, and to define the issues.  Carving exceptions to this simple requirement that the motion for summary judgment state the specific grounds frustrates the purposes of Rule 166a(c).

McConnell v. Southside Indep. Sch. Dist.
, 858 S.W.2d 337, 341 (Tex. 1993).  There was not a proper no-evidence motion for summary judgment asserting the absence of evidence of the existence of a duty before the trial court, and therefore the basis for granting summary judgment could not have been the non-existence of a duty owed by Appellees to LaRue.

Appellees assert that LaRue’s complaint about lack of specificity is waived through the failure to timely specially except to the trial court, citing
  McConnell v. Southside Independent School District,
 858 S.W.2d at 342-43 and 
Dyegard Land Partnership v. Hoover
, 39 S.W.3d 300, 307 n.4 (Tex. App.—Fort Worth 2001, no pet.).  We conclude this argument is unpersuasive.  These cases involve grounds for traditional motions for summary judgment that are unclear or ambiguous.  As pointed out by the 
McConnell 
court, “[E]ven in this situation, however, an appellate court cannot read between the lines, infer or glean from the pleadings or the proof any grounds for granting the summary judgment other than those grounds 
expressly set forth 
before the trial court [in the motion for summary judgment].”  
McConnell
, 858 S.W.2d at 343 (emphasis supplied).  Further, “[t]he practical effect of failure to except is that the non-movant loses his right to have the grounds for summary judgment narrowly focused, thereby running the risk of having an appellate court determine the grounds it believes were 
expressly presented
 in the summary judgment.” 
 Id
. (emphasis supplied).  Such is certainly not the case here.  The assertion of no duty has not been “expressly set forth” or “expressly presented,” and the motion is not “unclear or ambiguous.”  We conclude that there has been no waiver of the right to complain about specificity.

Appellees next assert that the issue of duty may be raised not only in the  motion, but also in replies to responses to the motion, citing 
Stiles v. Resolution Trust Corp.
, 867 S.W.2d 24, 26 (Tex. 1993).  We would first observe that 
Stiles
 is a traditional motion for summary judgment case and that rule 166a(c) states that “[i]ssues not expressly presented to the trial court by written motion, answer, or 
other response 
shall not be considered on appeal as grounds for reversal.”  
Tex. R. Civ. P.
 166a(c) (emphasis supplied).  The 
Stiles
 Court held that this restricts the “trial court’s ruling to issues raised in the motion, response, and any subsequent replies,” 
and that “[t]hough the rule does not expressly preclude an appellate court from affirming a summary judgment on grounds not raised in the trial court, we believe that the reasons for the rule in the trial court apply equally in the appellate court.”  
Stiles
, 867 S.W.2d at 26,.
  The question, therefore, is whether a movant for a no-evidence motion for summary judgment may for the first time assert a no-evidence point in a reply to the non-movant’s response.  Our Texas Supreme Court has addressed this specific language in Rule 166a(c), holding that 

[t]he word written modifies not only the word motion, but also the words answer and other response.  The issues required by the rule to be expressly presented are those pointed out to the trial court in written motions, written answers, or written responses 
to the motion
.  The term answer in the context of the rule refers to the answer to the motion, not an answer generally filed in response to a petition.

City of Houston v. Clear Creek Basin Auth.
, 589 S.W.2d 671, 673 (Tex. 1979) (emphasis supplied).  Therefore, the phrase “or other response” means responses to the summary judgment motion, as therefore must “replies” referred to in 
Stiles
.  
Stiles
, 867 S.W.2d at 26. This reasoning should apply equally to no-evidence motions for summary judgment.  We hold that the proper procedure to raise a new no-evidence point is to file an amended or supplemental no-evidence motion for summary judgment specifically setting forth the new element or elements of the non-movant’s cause of action or affirmative defense for which it is claimed no evidence has been presented, and that a new element asserted as a basis for a no-evidence motion may not first be presented in a reply to a response to a no-evidence motion for summary judgment.  

Therefore, we agree with LaRue that the basis for granting Appellees’ no-evidence motion for summary judgment could not properly have been the absence of a duty by Appellees to LaRue because that issue was not before the trial court, that this issue was not waived by LaRue, and that a reply to a response to a no-evidence motion for summary judgment may not contain a new no-evidence issue.  LaRue’s first point is sustained.

VIII.  Duty

LaRue asserts in his second point that the trial court erred if it granted the Appellees’ no-evidence motions for summary judgment on the basis that they owed no duty to LaRue.  We do not reach this point because by sustaining LaRue’s first point, we conclude that the question of any duty owed by Appellees to LaRue was not properly before the trial court and could not therefore have been the basis for the granting of the no-evidence motions for summary judgment.

IX.  Breach of Duty

We next turn to LaRue’s third point, in which he contends that he presented more than a scintilla of evidence that the various duties allegedly owed him by Appellees were breached.  LaRue first asserts that Chief breached a duty to exercise reasonable care in its control over Smith Oil’s cleaning of the highway, citing 
Redinger v. Living, Inc
., 689 S.W.2d 415, 418 (Tex. 1985).  There was some evidence presented that mud existed on the highway at the accident scene that was traceable to the Lease, as set forth in the affidavit testimony of witnesses Price and Rogers.  Based on the 
Lampasas
 factors previously discussed, we may uphold the granting of the no-evidence motion for summaryjudgment if “the evidence offered to prove a vital fact is no more than a mere scintilla.”  
Lampasas
, 988 S.W.2d at 432.  

Less than a scintilla of evidence exists when the evidence offered to prove a vital fact is so weak that it does no more than create a mere surmise or suspicion of its existence and, in legal effect, is no evidence.  More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair minded people to differ in their conclusions as to the existence of the vital fact.

Lias v. State Farm Mut. Auto. Ins. Agency
, 45 S.W.3d 330, 333 (Tex. App.—Dallas 2001, no pet.) (citing 
Kindred v. Con/Chem, Inc.
, 650 S.W.2d 61, 63 (Tex. 1983)).  Under these circumstances, we cannot say that the testimony of two witnesses who were at the accident scene shortly after its occurrence amounts to no more than a “surmise or suspicion” that Chief failed to exercise reasonable care over Smith Oil’s work.  The absence of evidence of a breach of this alleged duty could not have be a proper ground for the grant of summary judgment. 

LaRue next asserts that he presented sufficient evidence that Chief breached both its duty as the controller of the Lease premises not to jeopardize or endanger the safety of persons traveling on the adjacent highway, as articulated in 
Alamo National Bank v. Kraus
, 616 S.W.2d 908, 910 (Tex. 1981), and its duty to prevent activities and conditions that present a dangerous condition to those outside the property, again citing 
Kraus
, 616 S.W.2d at 910, and relying in part on section 414a of the Restatement (Second) of Torts, 
R2d Torts 
§ 414a (2003).  Again, without deciding whether such duties existed, the same evidentiary testimony in the Price and Rogers affidavits, along with the undisputed Chief/Smith Oil relationship is sufficient to meet LaRue’s burden of the breach of the alleged duties when faced with a no-evidence motion for summary judgment.  LaRue further argues that Chief breached a duty to him to guard against peculiar risks of harm arising from independent contractor activities, as set forth in 
Scott Fetzer Co. v. Read
, 945 S.W.2d 854, 860-61 (Tex. App.—Austin 1997), 
aff’d,
 990 S.W.2d 732 (Tex. 1998), based on section 416aof the Restatement (Second) of Torts; 
see 
R2d Torts
.  We agree that the same evidence is more than a scintilla of evidence of the breach of this alleged duty and is sufficient to defeat the no-evidence motions. 

Finally, LaRue alleges that each appellee breached a duty to avoid creating hazardous conditions on the highway, citing section 600.001(a) of the Texas Transportation Code
:  “[A] person who drops or permits to be dropped or thrown on a highway destructive or injurious material shall immediately remove the material or cause it to be removed.”  
Texas Transp. Code Ann
. § 600.001(a) (Vernon 1999).  This is somewhat similar to case law regarding the breach of a duty to refrain from using a highway in a manner that creates conditions that are dangerous to others who use the highway or to warn of dangerous conditions if they are created.  
See
 
Strakos v. Gehring
, 360 S.W.2d 787, 803-04 (Tex. 1962) (unfilled post holes adjacent to a highway); 
Jalco, Inc. v. Rodriguez
, 578 S.W.2d 452, 453 (Tex. Civ. App.—Waco 1979, no writ) (missing man hole cover);
 Kirby Lumber Corp. v. Walters
, 277 S.W.2d 796, 799 (Tex. Civ. App.—Beaumont 1955, no writ) (mud on highway).  There are no cases that have construed the terms “destructive or injurious material” in this code section.  We are mindful that our Texas Supreme Court has recently determined that “holding a land owner accountable for naturally accumulating mud that remains in its natural state would be a heavy burden because rain is beyond the control of landowners,” and has held that “[t]he ordinary mud found on the concrete slab outside of the M.O. Dental Lab [that] accumulated due to rain and remained in its natural state . . . was not a condition that posed an unreasonable risk of harm to Rape necessary to sustain her premise liability action.”  
M.O. Dental Lab v. Rape
, 139 S.W.3d 671, 676 (Tex. 2004).  The mud here, according to Price and Rogers, was not “naturally accumulating” and did not accumulate “due to rain” but originated 200 feet away from the accident site at the Lease entrance.  While mud deposited on a highway may not be analogous to a missing man hole cover or open fence post holes, these facts are close to those in 
Kirby Lumber
, and we do find that under these circumstances the affidavit testimony previously discussed is more than a scintilla of evidence that there existed “destructive or injurious material” from the Lease on the highway that Smith Oil had been directed by Chief to remove.  Hence, there is sufficient evidence of a breach of this alleged duty to avoid summary judgment in favor of Chief. 

While there is disputed testimony as to the proximity to the highway to which Big D moved the well drilling equipment, there is no evidence that Big D’s equipment deposited any mud on the highway directly.  LaRue points to testimony from Estelle, who stated that “one particular morning when I was headed back home, they were actually using a bulldozer to pull the truck to the gate entrance.”  This, however, cannot be said to be evidence that Big D dropped, or permitted to be dropped or thrown, “destructive or injurious materials” on the highway and is no evidence of a breach of duty owed by Big D to LaRue.  On the other hand, Smith Oil allowed mud to reach the highway from the casings it removed, and there is more than a scintilla of evidence of Smith Oil’s breach of this statutory provision.  Likewise, SPA removed the drilling equipment, and its trucks also left mud on the highway.  Consequently, there is sufficient evidence of a breach of this alleged duty to avoid summary judgment.
  
We sustain LaRue’s third point as to Chief, SPA, and Smith Oil and overrule this point as to Big D.

X.  Proximate Cause

In LaRue’s fourth point, he asserts that there was sufficient evidence of proximate causation to meet Appellees’ no-evidence motions for summary judgment.  Proximate cause has two elements, cause-in-fact and foreseeability
.  Travis v. City of Mesquite
, 830 S.W.2d 94, 98 (Tex. 1992).  The test for cause-in-fact is whether the act or omission was a substantial factor in causing the injuries without which the harm would not have occurred.  
Lee Lewis Constr., Inc. v. Harrison
, 70 S.W.3d 778, 784 (Tex. 2001).  Likewise, forseeability means that an actor as a person of ordinary intelligence should have anticipated the dangers that his negligent act created for others.  
Id
. at 785.  The Price and Rogers affidavits represent some evidence that there was mud on the highway at the location of LaRue’s accident, but Price and Rogers were not witnesses to the accident.  The only identified witnesses to the accident were LaRue and Estelle.  Estelle stated that he could not say that there was mud on the southbound lane of the roadway where LaRue was traveling and said that he did not know what caused LaRue to slide off the road.  There is no testimony in the record before us from LaRue.  There is no direct evidence of causation or circumstantial evidence, such as testimony regarding skidmarks in mud in the southbound lane.  LaRue basically argues that because there was some evidence from the affidavit testimony that there was mud on both sides of the road (Price affidavit) and mud on FM 718 (Rogers and Gibson affidavits) that this is tantamount to some evidence of cause-in-fact, that is, that mud caused the accident.  We conclude that it amounts to no more than surmise and suspicion.  The trial court therefore could have correctly based the summary judgment on the ground that there was no evidence of proximate cause.  Accordingly, we overrule LaRue’s fourth point.

XI.  Gross Negligence

In his fifth point, LaRue argues that he sustained his burden to produce sufficient evidence of gross negligence on the part of Appellees to avoid summary judgment.  Gross negligence contains two elements:  (1) from the actor’s standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others and (2) the actor must have actual subjective awareness of the risk involved but nevertheless proceed in conscious indifference of the rights and safety or welfare of others.  
Harrison
, 70 S.W.3d at 785.  Circumstantial evidence may be sufficient to prove both elements, and some evidence of care by movants does not necessarily defeat a showing of gross negligence.  
Id.
  Extreme risk means the likelihood of serious injury to the complaining party, and actual awareness means that the actor knew about the peril but the acts or omissions complained of demonstrated that the defendant did not care.  
Id
.  

Further, in order to obtain an award of damages based on the finding of gross negligence, LaRue must demonstrate by clear and convincing evidence that the harm he suffered resulted from malice.  Malice is defined as “a specific intent by [Appellees] to cause substantial injury to Josh LaRue,” see 
Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges 
PJC 4.2b (2003), or an act or omission by Appellees that constitutes gross negligence as previously defined.

It is undisputed that Chief hired Smith Oil to use a backhoe to clean dirt from the highway.  The effectiveness of this operation is disputed.  However, there is no evidence that Chief or Smith Oil was indifferent to whether the job was done properly to the peril of LaRue or had specific intent to harm LaRue.  Further, there is no evidence that Big D or SPA was in any way involved in insuring that the cleanup took place properly or that they were indifferent to the safety of LaRue, or intended to harm him.  In short, there is no evidence of gross negligence in this case, and LaRue’s fifth point is overruled.

XII.  Conclusion

Having overruled LaRue’s fourth and fifth points with respect to all Appellees and LaRue’s third point with respect to Big D, the granting of summary judgment by the trial court as to all Appellees is affirmed.

BOB MCCOY

JUSTICE

PANEL B: LIVINGSTON, GARDNER, and MCCOY, JJ.

DELIVERED:  March 31, 2005

FOOTNOTES
1:
LaRue continually refers to mud and oil on the highway in his briefs. However, the evidence of oil on the road consists of one line of testimony from Duncan, a supervisor with Smith Oil, who said in response to the question “Where was that mud coming from?” that it was coming from “the oil casing itself,” and from the affidavit of Brian Price who stated, “I personally noticed mud and oil on FM 718, spread for a great distance and on both sides of the road . . . I could also see the origin of the mud, which was the Chief Pent Lease.”  Because of the paucity of evidence concerning the existence and origin of the oil and its causal relationship to the accident, this opinion will only address the existence of mud on the highway.