Ralph O. Douglas v. Anson Financial, Inc., Don Bonner, and Mike Ferguson

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-283-CV

RALPH O. DOUGLAS APPELLANT

V.

ANSON FINANCIAL, INC., APPELLEES

DON BONNER, AND 

MIKE FERGUSON 

------------

FROM THE 352
ND
 DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Ralph O. Douglas, an inmate proceeding pro se, sued Appellees Anson Financial, Inc., (Anson) Don Bonner, and Mike Ferguson, alleging a cause of action for their failure to produce his financial records upon his request.  The trial court denied Douglas’s motion for summary judgment and granted Appellees’ motion for summary judgment.  We affirm the trial court’s judgment.

I.  Factual and Procedural Background

On July 24, 1997, Douglas entered into an oral agreement with Vernon and Clara King for the Kings to deed their home to Douglas.  Anson held a lien on the home and was allegedly in the process of foreclosing upon it.  Ferguson was and is the president of Anson, and Bonner was an employee of Anson at the time the events forming the basis of this suit occurred.  On that same date, Bonner faxed Douglas a letter informing him of the amount necessary to pay off the Kings’ lien.

Two days later, the Kings signed a handwritten contract purporting to deed their home to Douglas.  The contract provided that Douglas would pay off the lien, and then the Kings would repay Douglas.  When the Kings had repaid Douglas in full, he would deed the home back to them for $10.00.

On July 29, 1997, Bonner faxed Douglas an “Extension of Lien” contract for the Kings to reinstate their loan, apparently for Douglas to get the Kings to sign.  The same day, the Kings signed the contract to reinstate their loan—and therefore prevent foreclosure—and Douglas remitted this contract to Appellees.  The Kings also gave Appellees written permission to discuss and disclose their loan information with Douglas.

On September 30, 1997, Douglas allegedly “made a mortgage on the Kings[’] home with their home as collateral.”  On the same day or the following day, Douglas paid to Appellees the balance in full that the Kings owed, and Appellees cashed Douglas’s check.  On October 13, 1997, Appellees conducted a credit check on Douglas, and on October 28, 1997, Ferguson, on behalf of Anson, signed a release of lien on the Kings’ property.

Douglas alleged that the Kings complained “to the Harris County District Attorney’s Office[,] asserting that [he] defrauded them of their home.”  On June 8, 1999, a grand jury indicted Douglas for theft of real estate (the Kings’ home).  To prove his alleged innocence, he claimed that he immediately contacted Appellees and requested his mortgage records from them, but Appellees did not produce them.  He claimed that the Kings committed perjury during the trial regarding the transaction.  He was convicted of the offense and  was thereafter incarcerated.  On June 29, 2000, Douglas sent a notarized subpoena request to Appellees for his mortgage records.  On March 28, 2002, Douglas served the Harris County District Clerk and Appellees with a “notice” to compel production of documents from Appellees, stating that a request for a subpoena to compel production would follow.  On April 19, 2002, Douglas requested the clerk to issue a subpoena duces tecum on Appellees.  Douglas alleges that Appellees did not produce the records he requested to him but served the Harris County District Attorney’s Office with copies.

On May 14, 2003, Douglas filed a lawsuit against Appellees for their failure to produce his records.  He filed an affidavit stating that he had requested his records from Appellees on several occasions and that Appellees had violated federal and state laws by refusing to produce his records.  Among other relief, he requested compensatory damages of $10 million and punitive damages of $250,000.

On July 10, 2003, Douglas served Appellees and the trial court with an “open records request.”  On August 13, 2003, he filed a motion to compel Appellees to respond to his discovery requests.  The trial court did not rule on the motion.  On August 21, 2003, he filed a motion to compel Appellees to answer his open records request, on which the trial court also did not rule.  On December 5, 2003, Douglas requested the Tarrant County District Clerk to issue a subpoena duces tecum, which the clerk issued the following February after Douglas provided the date, time, and address to appear.  He alleges that Appellees did not respond to these requests either.

On January 4, 2005, Douglas filed a motion for summary judgment against Appellees based on their failure to produce his financial records to him, alleging that he had a cause of action under various provisions of Title 12 of the United States Code.
(footnote: 2)  Appellees responded that Douglas failed to state any recognizable cause of action, he failed to address any of their affirmative defenses in his motion, he failed to attach exhibits listed in his motion, and his affidavits were defective.  In addition, Ferguson’s affidavit, attached to Appellees’ response, states that Anson did not have any mortgage records for Douglas and that Anson had already sent Douglas copies of all mortgage documents that it had with the Kings.

On January 31, 2005, Appellees filed a traditional motion for summary judgment.  They argued that Douglas failed to state a viable cause of action.  In addition, they alleged that because there was no written agreement between themselves and Douglas, the statute of frauds barred any possible contractual claim by Douglas.  Also, they alleged that Douglas’s claims were barred by the applicable statute of limitations, listing several possibly relevant statutes of limitations, depending on how his claims were construed.  Ferguson’s affidavit, attached to the motion, states that Anson never entered into any mortgage, contract, or written agreement with Douglas.  It also states that Bonner was not authorized to enter into a mortgage agreement or any other written agreement with Douglas.

On the same day, Appellees also filed a no-evidence motion for summary judgment, claiming that there was no evidence of sixteen different items.  Specifically, they alleged that there was 
no evidence that they were obligated by any law or contract to produce any records or that they had violated any law or contractual obligation
.

On February 1, 2005, Appellees filed a first amended answer.  In their answer, Appellees asserted that Douglas had failed to state a claim, and, even if he had stated a claim, it was barred by the statute of limitations and the statute of frauds.  They asserted that he did not have the capacity to sue because he was not a party to the deed of trust, that any alleged oral agreement is not supported by consideration or that such consideration failed, that he was estopped from asserting claims against them, and that he was a vexatious litigant.  On February 25, 2005, Douglas filed a memorandum, which rebutted Appellees’ assertions.  On May 9, 2005, Douglas filed an “amended motion for summary judgment to [Appellees’] response to [his] original motion for summary judgment,” which also rebutted Appellees’ assertions.

On June 20, 2005, the trial court signed an order granting Appellees’ motions for summary judgment on both traditional and no-evidence grounds and denying Douglas’s motion and amended motion for summary judgment, dismissing Douglas’s case with prejudice.  On July 20, 2005, Douglas filed objections to thirty-eight different matters.  He did not file a motion that would extend the trial court’s plenary power.

On appeal, Douglas presents eighty issues.  In his summary of his argument, he alleges, among other things, that the trial court abused its discretion by granting Appellees’ motions for summary judgment, that Appellees did not present any evidence entitling them to summary judgment, and that the trial court did not consider any of his evidence presented in his amended motion for summary judgment or his responses and objections.  All of the issues focus on the propriety of the summary judgment.

II.  Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.
(footnote: 3)  The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.
(footnote: 4)
 When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant’s favor.
(footnote: 5)  
Evidence that favors the movant’s position will not be considered unless it is uncontroverted.
(footnote: 6)
 The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant’s cause of action or defense as a matter of law.
(footnote: 7)
 A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim.
(footnote: 8)  Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant.
(footnote: 9)  A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense.
(footnote: 10)  
To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law.
(footnote: 11)
 When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties’ summary judgment evidence and determine all questions presented.
(footnote: 12)  
The reviewing court should render the judgment that the trial court should have rendered.
(footnote: 13)
 In addition, after an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant’s claim or defense.
(footnote: 14)  The motion must specifically state the elements for which there is no evidence.
(footnote: 15)  The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact.
(footnote: 16)  We review the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered.
(footnote: 17)  If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper.
(footnote: 18)
 When a party moves for summary judgment under both rules 166a(c) and 166a(i), we will first review the trial court’s judgment under the standards of rule 166a(i).
(footnote: 19)  If the appellant failed to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether appellee’s summary judgment proof satisfied the less stringent rule 166a(c) burden.
(footnote: 20)
III.  Legal Analysis

Appellees allege in their no-evidence motion for summary judgment that there is no evidence that they were obligated by any law or contract to produce any records or that they had violated any law or contractual obligation.  We agree.

A.  Title 12 Violations

In his motion for summary judgment, Douglas argues that his cause of action arises under Sections 2802(1), (4), 3404(a)(5), and 6827(1)-(4) of the United States Code Title 12, entitled “Banks and Banking.”
(footnote: 21)
 We could not locate Title 12, Section 6827.  However, Douglas may have intended to refer to Title 15, Section 6827.
(footnote: 22)  This section provides definitions for a subchapter of Chapter 94, entitled “Fraudulent Access to Financial Information.”
(footnote: 23)  This subchapter prohibits obtaining customer information by false pretenses.
(footnote: 24)  Even if he intended to refer to this subsection, Douglas’s attempted cause of action is still unclear to us.  Even if he could be considered Anson’s “customer,”
(footnote: 25) Douglas has not alleged that anyone obtained his information by false pretenses.  Moreover, compliance with this subchapter is enforced by the Federal Trade Commission and other agencies,
(footnote: 26) not a private litigant like Douglas.

Section 3404(a)(5) governs the contents of statements furnished by customers to financial institutions and government authorities and provides:

A customer may authorize disclosure under section 3402(1) of this title if he furnishes to the financial institution and to the Government authority seeking to obtain such disclosure a signed and dated statement which . . . states the customer’s rights under this chapter.
(footnote: 27)

By referring to Section 3404, Douglas is apparently attempting to bring a cause of action under Chapter 35 of Title 12, entitled “Right to Financial Privacy.”  This chapter governs access to financial records, such as through a subpoena process, customer authorization, and formal request.
(footnote: 28)  Even if Douglas could be considered Anson’s customer, Chapter 35 provides such access by “Government authorit[ies],” which are defined as agencies or departments of the United States or their officers, employees, or agents.
(footnote: 29)  Douglas is not a government authority.  Also, Section 3404(a)(5) simply provides for 
permissive 
disclosure 
by 
customers.
(footnote: 30)  In addition, Section 3416 of Chapter 35 explicitly provides that “[a]n action to enforce any provision of this chapter may be brought in any appropriate United States district court.”
(footnote: 31)  Appellees argue in their brief that Douglas was required to bring any possible cause of action under Title 12 in federal court.  It does not appear from the appellate record that Appellees raised this argument at the trial court level.  However, questions of subject matter jurisdiction cannot be waived and may be raised for the first time on appeal.
(footnote: 32)  If Douglas intended to bring a cause of action under Chapter 35 of Title 12, he should have done so in a federal court, not a state court, and this court has no jurisdiction to hear his appeal on that issue.
(footnote: 33)
 Subsections (1) and (4) of Section 2802 provide definitions for “mortgage loan” and ”other lending institutions.”
(footnote: 34)  By referring to these provisions, it is possible that Douglas is attempting to bring a cause of action under other provisions of this chapter, Chapter 29, entitled  “Home Mortgage Disclosure.”
(footnote: 35)  Section 2803 of this chapter provides that certain depository institutions “shall compile and make available . . . to the public for inspection and copying at the home office . . . the number and total dollar amount of mortgage loans which were (A) originated . . . or (B) purchased by that institution.”
(footnote: 36)  This information is to be itemized to show the number and dollar amount for each item.
(footnote: 37)  The statute also provides that “any depository institution which is required to make disclosures under this section shall make available to the public, upon request, loan application register information (as defined by the Board by regulation).”
(footnote: 38)  The statute provides time periods for which the institutions are to maintain the records and make the disclosures.
(footnote: 39)  However, enforcement of Chapter 29's provisions is governed by Section 2804, which provides that compliance shall be enforced, depending on the type of financial institution at issue, by the Office of the Comptroller of the Currency, by the Board, by the Board of Directors of the Federal Deposit Insurance Corporation, by the Director of the Office of Thrift Supervision, by the Administrator of the National Credit Union Administration, or by the Secretary of Housing and Urban Development.
(footnote: 40)  Therefore, Douglas has not presented any evidence that he is a party who can enforce provisions of Chapter 29 in a private cause of action.

Therefore, even though Douglas asserts that Appellees are in violation of  Title 12, there is no evidence 
that they were obligated by Title 12 to produce any records or that they had violated Title 12 by not doing so, and 
Douglas has not shown that he is a party entitled to enforce these provisions.

B.  Written Discovery Violation

Appellees suggest that by bringing his suit, Douglas was attempting to conduct written discovery of Appellees in connection with his criminal trial. Douglas’s notice to compel production of documents and his subsequent request for the clerk to issue a subpoena duces tecum referenced Texas Rules of Civil Procedure 205.1, 205.2, and 205.3.
(footnote: 41)  These rules provide a process for civil litigants to subpoena non-parties and compel production of documents.
(footnote: 42)  However, the case for which Douglas appears to be requesting discovery—theft of real estate—is a criminal case
(footnote: 43) as opposed to a civil case.  Regardless, even if the discovery requests had been proper under either the Texas Rules of Civil Procedure or the Texas Code of Criminal Procedure, any failure to comply with discovery requests does not give rise to a private cause of action.  Rather, under the rules of civil procedure, the 
court 
may treat such failure as contempt of court, and under the Code of Criminal Procedure, the 
court 
may fine a disobedient subpoenaed witness.
(footnote: 44)  Therefore, there is no evidence that Appellees violated any law requiring them to produce the documents.  In addition, even if Appellees were required to produce the documents, Douglas has not shown that he has an independent cause of action to enforce the discovery provisions.

C.  Gross Negligence
 

Douglas also appears to be alleging on appeal that his argument included a basis for finding that Appellees were grossly negligent.  Gross negligence contains two elements:  (1) from the actor's standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) the actor must have actual subjective awareness of the risk involved but nevertheless proceed in conscious indifference of the rights and safety or welfare of others.
(footnote: 45) 
However, in his motion for summary judgment, Douglas only argued that Appellees “have a duty to produce [his] records upon request;” he did not allege that they had been grossly negligent.  Even on appeal, he does not provide a basis for his claim and only alleges that Appellees caused him to lose a substantial amount of money.  Therefore, we agree with Appellees that there is no evidence that they were grossly negligent or that they have engaged in any act or omission in breach of any duty, law, or contract that involves a high degree of risk of which they had subjective awareness.

D.  Breach of Contract

Douglas also may be alleging that Appellees breached a contract or agreement.  However, even if this is his allegation, all contracts in this case were between Douglas and the Kings and between the Kings and Appellees.  Douglas alleged in his petition that he “made a mortgage on the Kings[‘] home with their home as collateral.”  We are unclear what he meant by this statement, and there is no evidence in the record of any such mortgage agreement.  In addition, it is unclear if he is simply referring to having acted on behalf of the Kings because he had reinstated their loan on their behalf.  Also, Douglas appears to be alleging on appeal that Appellees ratified the contract between the Kings and him.  However, we agree with Appellees that there is no evidence that Douglas entered into any agreement with Appellees, that Appellees were required by any contract to produce records to Douglas, or that Appellees breached any contract with Douglas or to which Douglas had a right to demand action on from Appellees.

E.  Open Records Request

In his original petition, Douglas stated that Appellees are in violation of the “Open Records Act/Freedom of Information Act.”  He refers several times in summary judgment documents to his requests to Appellees as “open records request[s].”  The Texas Public Information Act was formerly known as the Texas Open Records Act.
(footnote: 46)  Therefore, by stating “Open Records Act,” Douglas was likely referring to the Texas Public Information Act.
(footnote: 47)  This Act provides for certain disclosure of “public information,” which is defined as information that is collected, assembled, or maintained 1) by a governmental body or 2) for a governmental body, and the governmental body owns the information or has a right of access to it.
(footnote: 48)  However, even if Appellees were a governmental body—which Douglas has not alleged—governmental bodies are “not required to accept or comply with a request for information from . . . an individual who is imprisoned or confined in a correctional facility.”
(footnote: 49)  Therefore, Douglas’s labeling his request as an “open records request” does not change the result, as there is no evidence that Appellees violated—or were even parties who 
could 
have violated—the Texas Public Information Act.

As stated, Douglas also alleged in his original petition that Appellees violated the Federal Freedom of Information Act.
  
Section 552
 
of Title 5 of the Unites States Code provides that “[e]ach agency . . . shall make available for public inspection and copying” certain records.
(footnote: 50)  “Agency” is defined as “each authority of the Government of the United States, whether or not it is within or subject to review by another agency.”
(footnote: 51)  It “includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency.”
(footnote: 52)
 On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.
(footnote: 53)

It does not appear, and Douglas has not alleged, that Appellees are an agency within the meaning of the statute.  In addition, Section 552 specifically confers jurisdiction on United States courts, not state courts.

Section 552a of the same title provides that

[e]ach agency that maintains a system of records shall . . . upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him . . . to review the record and have a copy made of all or any portion thereof in a form comprehensible to him.
(footnote: 54)

If the agency fails to do so, “the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.”
(footnote: 55)  Again, it does not appear, and Douglas does not allege, that Appellees are an agency within the meaning of the statute.  Also, Section 552a specifically confers jurisdiction on United States courts.  Therefore, even if we were to construe Douglas’s summary judgment documents as asserting a cause of action under the Federal Public Information Act, Appellees had no obligation under the Act to produce his records to him.

F.  Fraud

In their no-evidence motion for summary judgment, Appellees stated that “[t]here is no evidence that [they] have engaged in fraud of [Douglas].”  Also, in their traditional motion for summary judgment, they allege that “potentially applicable” statutes of limitations have passed for all possible claims that Douglas alleged, listing fraud as one of the eight possibilities.  In his appellate brief, Douglas contends that Appellees’ no-evidence motion is “legally and factually insufficient in respect to [their] assertion [that they] have [not] engaged in fraud of [him].’”

To prevail on a claim of fraud, Douglas must prove that (1) Appellees made a material representation that was false, (2) they knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth, (3) they intended to induce Douglas to act upon the representation, and (4) Douglas actually and justifiably relied upon the representation and thereby suffered injury.
(footnote: 56)  Appellees’ no-evidence motion only asserts that there is “no evidence that [they] have engaged in fraud of [Douglas]” and does not specifically state the element or elements of fraud for which there is no evidence.  

However, Douglas does not appear to have raised a cause of action for fraud, and, on appeal, he makes no reference to fraud until his statement of an issue.  He never alleged that Appellees made a material misrepresentation that was false or that any of the other elements were met.  In his “amended motion for summary judgment to [their] response to [his] original motion for summary judgment,” he simply stated that he had refuted every ground alleged in their no-evidence motion.  He also argued that 
he 
had not committed any fraudulent or criminal acts, but he does not allege that Appellees did so.  It appears that Appellees were simply covering all possible grounds in their no-evidence motion because they were unable to discern what cause of action Douglas was alleging.  Thus, because the absence of fraud does not appear to have been a basis for the trial court’s decision, the trial court could not have abused its discretion on this basis.

G.  Ferguson’s Affidavit

Douglas alleges that Ferguson’s affidavit attached to Appellees’ traditional motion for summary judgment is conclusory and therefore inadmissible.  We disagree.  “A conclusory statement is one that does not provide the underlying facts to support the conclusion.”
(footnote: 57)  Ferguson’s affidavit does not make conclusions of law, but merely recites relevant facts within his knowledge, such as that he is the president of Anson, that he is the only person with authority to enter mortgage agreements on behalf of Anson, that Bonner was an employee of Anson, and other statements.

In addition, Douglas’s “amended motion for summary judgment to [Appellees’] response to [his] original motion for summary judgment” alleges that his “Exhibit V” refutes Ferguson’s affidavit because it shows that Ferguson released the lien on the Kings’ property.  However, this exhibit is simply the release of lien signed by Ferguson and does not appear to refute any assertions in Ferguson’s affidavit describing who did or did not have authority to enter into mortgage agreements.

H.  Vexatious Litigant

In Appellees’ first amended answer, they allege that Douglas is a vexatious litigant.  Douglas complains about this statement on appeal. This assertion was not included in any of the motions for summary judgment.  Therefore, it could not have been a basis for the trial court’s ruling because summary judgment cannot be granted except on the grounds expressly presented in the motion.
(footnote: 58)  Consequently, we do not address it.
(footnote: 59)

IV.  Conclusion

Douglas has presented no evidence that Appellees violated any law or contractual obligation by allegedly failing to produce his financial records to him.  In addition, because Douglas failed to state a cause of action, he did not prove as a matter of law all elements of any cause of action, and the trial court did not abuse its discretion by denying his motion for summary judgment and granting Appellees’ motion for summary judgment.  Because we have upheld the summary judgment, we do not reach any remaining issues.
(footnote: 60)  We affirm the judgment of the trial court.

PER CURIAM

PANEL F: DAUPHINOT, HOLMAN, and GARDNER, JJ.

DELIVERED:  March 30, 2006

FOOTNOTES
1:
See 
Tex. R. App. P. 47.4.

2:
See 
12 U.S.C.A. §§ 2802(1), (4), 3404(a)(5) (West 2001).

3:
Tex. R. Civ. P.
 166a(c); 
Sw. Elec. Power Co. v. Grant, 
73 S.W.3d 211, 215 (Tex. 2002); 
City of Houston v. Clear Creek Basin Auth.
, 589 S.W.2d 671, 678 (Tex. 1979).

4:
Sw. Elec. Power Co., 
73 S.W.3d at 215.

5:
Valence Operating Co. v. Dorsett
, 164 S.W.3d 656, 661 (Tex. 2005).

6:
Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.
, 391 S.W.2d 41, 47 (Tex. 1965).

7:
Clear Creek Basin
, 589 S.W.2d at 678.

8:
IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason
,
 
143 S.W.3d 794, 798 (Tex. 2004).

9:
Centeq Realty, Inc. v. Siegler
, 899 S.W.2d 195, 197 (Tex. 1995).

10:
Rhone-Poulenc, Inc. v. Steel
, 997 S.W.2d 217, 223 (Tex. 1999).

11:
Ryland Group, Inc. v. Hood,
 924 S.W.2d 120, 121 (Tex. 1996).

12:
FM Props. Operating Co. v. City of Austin
, 22 S.W.3d 868, 872 (Tex. 2000).

13:
Id
.

14:
Tex. R. Civ. P.
 166a(i).

15:
Id.; Johnson v. Brewer & Pritchard, P.C., 
73 S.W.3d 193, 207 (Tex. 2002).

16:
See
 
Tex. R. Civ. P.
 166a(i) & cmt.; 
Sw. Elec. Power Co.
,
 
73 S.W.3d at 215.

17:
King Ranch
,
 Inc. v. Chapman
, 118 S.W.3d 742, 751 (Tex. 2003), 
cert. denied
, 541 U.S. 1030 (2004); 
Johnson
, 73 S.W.3d at 197; 
Morgan v. Anthony
, 27 S.W.3d 928, 929 (Tex. 2000).

18:
Moore v. K Mart Corp.
, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied).

19:
Ford Motor Co. v. Ridgway
,
 
135 S.W.3d 598, 600 (Tex. 2004).

20:
Id.

21:
See 
12 U.S.C.A. §§ 2802(1), (4), 3404(a)(5).

22:
15 U.S.C.A. § 6827 (West 2005).

23:
Id.

24:
Id. § 
6821 (West 2005).

25:
Id.
 § 6827(1).

26:
Id. 
§ 6822 (West 2005).

27:
12 U.S.C.A. § 3404(a)(5).

28:
See id. 
§§ 3401-3422 (West 2001 & Supp. 2005).

29:
Id. 
§ 3401(3) (West 2001).

30:
Id.
 § 3404(a)(5).

31:
Id. § 
3416 (West 2001).

32:
Taylor Elec. Servs. Inc. v. Armstrong Elec. Supply Co.
, 167 S.W.3d 522, 529 (Tex. App.—Fort Worth 2005, no pet.); 
see also Waco ISD v. Gibson
, 22 S.W.3d 849, 850 (Tex. 2000).

33:
See 
12 U.S.C.A. § 3416.

34:
Id.
 § 2802(1), (4).

35:
Id. 
§§ 2801-2811 (West 2001).

36:
Id. § 
2803(a)(1).

37:
Id. 
§ 2803(a)(2).

38:
Id. 
§ 2803(j)(1) (“Board” means the Board of Governors of the Federal Reserve System.  12 U.S.C.A. 
§ 2802(5)).

39:
Id.
 § 2803(c), (d), (j)(5)-(6), (
l
).

40:
Id.
 § 2804(b).

41:
See 
Tex. R. Civ. P
. 205.1-.3.

42:
Id.

43:
See 
Tex. Penal Code Ann. § 31.03 (
Vernon Supp. 2005).

44:
See 
Tex. R. Civ. P
. 215.2(c) (emphasis added); 
Tex. Code Crim. Proc. Ann. 
art 24.09 (Vernon 1989
) (emphasis added).

45:
LaRue v. Chief Oil & Gas
,
 L.L.C.
,
 
167 S.W.3d 866, 879 (Tex. App.—Fort Worth 2005, no pet.) (citing 
Lee Lewis Constr.
, 
Inc. v. Harrison
, 70 S.W.3d 778, 785 (Tex. 2001)).

46:
Thomas v. Cornyn
, 71 S.W.3d 473, 478 (Tex. App.—Austin 2002, no pet.) (
citing Act of May 29, 1995, 74th Leg., R.S., ch. 1035, § 1, 1995 Tex. Gen. Laws 5127).

47:
Tex. Gov't Code Ann
. §§ 552.001-.353 (Vernon 2004 & Supp. 2005).
 

48:
Id
.
 § 552.002(a) (Vernon 2004).

49:
Id
.
 § 552.028(a)(1).

50:
5 U.S.C.A. § 552(a)(2) (West 1996 & Supp. 2005).

51:
Id.
 § 551(1) (West 1996).

52:
Id.
 § 552(f) (West 1996 & Supp. 2005)).

53:
Id.
 § 552(a)(4)(B) (West 2005).

54:
Id.
 § 552a(d)(1) (West 1996).

55:
Id.
 § 552a(g)(1).

56:
See Ernst & Young
,
 L.L.P. v. Pac. Mut. Life Ins. Co.
, 51 S.W.3d 573, 577 (Tex. 2001).

57:
Choctaw Props.
,
 L.L.C. v. Aledo ISD
, 127 S.W.3d 235, 242 (Tex. App.—Waco 2003, no pet.)(
quoting Rodriguez v. Wal-Mart Stores
,
 Inc
., 52 S.W.3d 814, 823 (Tex. App.—San Antonio 2001), 
rev'd on other grounds
, 92 S.W.3d 502 (Tex. 2002)).

58:
See Johnson
, 73 S.W.3d at 204 ; 
Sci. Spectrum
,
 Inc. v. Martinez
, 941 S.W.2d 910, 912 (Tex. 1997).

59:
See 
Tex. R. App. P. 
47.1.

60:
See id.