**Joe PALMA and Gladys Palma, Appellants,**

v.

**CHRIBRAN COMPANY, L.L.C., Appellee.**

No. 09–10–00075–CV.

Court of Appeals of Texas, Beaumont.

Submitted Sept. 16, 2010.

Decided Nov. 10, 2010.

Jeffrey L. Dorrell, Escamilla, Poneck & Cruz, LLP, Houston, for Joe appellants.

H. Daniel Spain, Bradley E. Chambers, Adam W. Green, Hutson Smelley, Bobbie L. Stratton, Spain Chambers, Houston, Ray A. Burgess, Hope & Causey, Conroe, for appellee.

Before GAULTNEY, KREGER, and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

We are asked to consider whether the trial court erred in granting the appellee's no-evidence motion for summary judgment. Finding no error, we affirm the trial court's judgment.

### Background

In October 2005, the appellants, Joe and Gladys Palma, purchased a newly constructed home from Supreme Builders. Shortly after purchasing the home, Joe noticed that "water began continuously weeping from expansion joints in streets and driveways and welling up in the unpaved portions of lots in the lower-elevation areas of the streets[.]" He also

noticed that water pools in water meter recesses and remains there. In some of the development's lots, located on another street, Joe noticed that "water wells up continuously, as though from a babbling brook through the silty, sandy soil."

In October 2007, the Palmas sued Chribran Company, L.L.C., the developer of the subdivision, and Teas Lakes Owners Association, Inc., which they allege was responsible for maintaining the common areas in the development. The Palmas' suit attributes the excess water that enters their lot to water that collects in a pond constructed by Chribran. The Palmas contend that "[m]igrating pond water" caused their driveway to become "unsightly" and "permanently slick[.]" The Palmas' live pleading, their fourth amended petition, alleges that the water causing their damages migrates to their lot because the level of the water in the pond is higher than the level of their lot, and the pond was constructed in an area containing sandy, highly permeable soil, without using a liner or water barrier. During oral argument, the Palmas' attorney explained that they did not claim that the water on their lot came from water that had overflowed the pond's bank. The Palmas sought damages in an amount of not more than $1,000,000.

Prior to the trial court's resolution of Chribran's motion for summary judgment, the Palmas amended their complaint. Their fourth amended petition alleges five claims against Chribran, the sole appellee in the matter now before us.[1] Two of the Palmas' claims allege that Chribran violated section 11.086 of the Texas Water Code, which prohibits any person from diverting or impounding the natural flow of surface water. *See* Tex. Water Code Ann. § 11.086 (West 2008). The Palmas' fourth amended petition also alleges that Chribran negligently constructed the pond, that Chribran's construction of the pond created a nuisance, and that Chribran is liable based on a claim for negligent trespass.[2] Approximately twenty-one months after the Palmas initially filed their suit, Chribran filed a no-evidence motion for summary judgment under Rule 166a(i) of the Texas Rules of Civil Procedure. Chribran's motion for summary judgment, in part, alleged that there was no evidence that Chribran's acts or omissions caused the Palmas' alleged damages.

The Palmas filed a response to Chribran's motion. The Palmas' response asserts that their summary-judgment evidence is sufficient to raise an issue of fact on the element of whether Chribran's construction of the pond had caused them to suffer damages. Without stating a basis

---

1. After the trial court granted Chribran's motion for summary judgment, it severed the Palmas' claims against Chribran into a separate cause number, making the trial court's judgment final for purposes of appeal. *See Martinez v. Humble Sand & Gravel, Inc.*, 875 S.W.2d 311, 312 (Tex.1994) (stating that a judgment in a case involving multiple parties may be made final as to some of the parties for purposes of appeal by the trial court's "severing the causes and parties disposed of by the judgment into a different cause").

2. " 'The gist of trespass to personalty is an injury to, or interference with, possession,

unlawfully, with or without the exercise of physical force.' " *Mountain States Tel. & Tel. Co. v. Vowell Constr. Co.*, 161 Tex. 432, 341 S.W.2d 148, 150 (1960) (quoting 87 C.J.S. *Trespass* §§ 8, 9). Thus the intentional entry of a scraper into a space lawfully occupied by a cable was held to be a "violation of a property right which gave rise to a cause of action regardless of negligence." *Id.* Because we focus on an element common to all of the Palmas' claims, we need not determine whether the Palmas' claim for negligent trespass differs from the type of trespass claim recognized in *Mountain States*.

for its ruling, the trial court granted Chribran's motion for summary judgment.

## Standard of Review

■ We review a trial court's decision to grant a no-evidence motion for summary judgment under the standards set forth in Rule 166a(i) of the Texas Rules of Civil Procedure. In essence, a no-evidence motion for summary judgment is the equivalent of a motion for a pretrial directed verdict. *Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 581 (Tex.2006).

To defeat a no-evidence summary judgment motion, the non-movant must produce summary-judgment evidence sufficient to raise a genuine issue of material fact on each element of the claims that are being challenged by the movant. Tex.R. Civ. P. 166a(i); *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 600 (Tex.2004). The non-movant raises a genuine issue of material fact by producing "more than a scintilla of evidence" to establish the challenged element's existence. *Ford Motor Co.,* 135 S.W.3d at 600. More than a scintilla of evidence exists when the evidence is such that reasonable and fair-minded people can differ in their conclusions. *Id.* at 601. If " 'the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence.' " *Id.* (quoting *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983)). In determining whether the non-movant has produced more than a scintilla of evidence, we review the evidence in the light most favorable to the non-movant, and we give credit to such evidence if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *See Mack Trucks,* 206 S.W.3d at 582.

"A summary judgment is not entitled to the same deference given to a judgment following a trial on the merits." *Bell v. Moores,* 832 S.W.2d 749, 751 (Tex.App.-Houston [14th Dist.] 1992, writ denied). We review a summary judgment *de novo* to determine whether the non-movant produced some evidence supporting the challenged elements of his claims. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). When a trial court's judgment granting a motion for summary judgment fails to specify the grounds upon which the court granted a summary judgment, we are required to affirm the summary judgment if any one of the independent summary-judgment grounds advanced in the motion for summary judgment defeats all of the plaintiffs' claims. *See Mack Trucks,* 206 S.W.3d at 581–82; *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872–73 (Tex.2000).

## Causation

■ As pled, causation-in-fact is an element shared by all of the Palmas' claims. *See* Tex. Water Code Ann. § 11.086(a), (b) (requiring damages to have been caused by a diversion of water); *Union Pump Co. v. Allbritton,* 898 S.W.2d 773, 775 (Tex. 1995) (explaining that proof of cause-in-fact is required in negligence and products cases); *Zapata v. Ford Motor Credit Co.,* 615 S.W.2d 198, 201 (Tex.1981) (noting that trespass claims, not involving an owners' loss of use of his property for a substantial period of time, require proof of damages caused by the trespass); *Aguilar v. Trujillo,* 162 S.W.3d 839, 850 (Tex.App.-El Paso 2005, pet. denied) (identifying causation as an element of a nuisance claim). To establish that an event is the cause-in-fact of the injured party's damages, the plaintiff must establish that the defendant's "act or omission was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred." *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v.*

*Mason,* 143 S.W.3d 794, 799 (Tex.2004); *Union Pump,* 898 S.W.2d at 775 ("Common to both proximate and producing cause is causation in fact, including the requirement that the defendant's conduct or product be a substantial factor in bringing about the plaintiff's injuries.").

All of the Palmas' claims are based on their assertion that the excess water on their lot had been caused by Chribran's construction of a pond located approximately four blocks to the northeast of the Palmas' home. The pond was constructed in 2004 during Chribran's initial development of the subdivision. The Palmas contend that the construction of the pond allows water to "flow through the sandy soil from the pond to the lower elevations in the area." Joe's affidavit, attached to the Palmas' summary-judgment evidence, contains his opinion that the water collects in the pond and then migrates from the pond to his lot forcing water to come up from beneath the ground and surface on his property. A grading and drainage plan, also included in the summary judgment proof, reflects that for water to migrate to the Palmas' home from the pond, water would be required to pass or be affected beneath Tarrytown Crossing Drive, Jefferson Crossing Drive, and Perkins Crossing Drive before affecting the north side of Highland Crossing Drive, the street on which the Palmas live. Construing the Palmas' pleading liberally, we also consider that Joe's affidavit, which states that "water wells up continuously, as though from a babbling brook through the silty, sandy soil[,]" to imply that water absorbed in the area of the pond affects the depth of the water table below his lot.

## Analysis

■ Because the trial court could grant Chribran's summary-judgment motion on all of the Palmas' claims based on Chri-

bran's contention that no evidence supported a claim that the construction of the pond caused the excess water to appear on the Palmas' lot, we first address the Palmas' evidence on causation. The Palmas rely on Joe's affidavit to establish that the construction of the pond had caused excess water to appear on their lot. With respect to causation, the Palmas' brief points us to the following portion of Joe's affidavit, in which he states:

> It is my experience as a layman that water flows from higher points to lower points. [For] almost 4 years, I have personally watched the continuously flowing water streaming across my driveway, staining the concrete[,] and soaking my neighbors' yards to the point that they sink ankle-deep in mud when they step onto grass. Every day, I see water weeping from expansion joints in the streets and flowing downhill at the lower elevations in [the subdivision]. By visual inspection, I can tell that the level of the water in the Chribran pond is higher than the elevation of my home and the other homes exhibiting similar problems. I know from the sworn testimony of Wes Tipton, the Supreme Builders['] sales representative who sold me my home and who personally saw Chribran constructing the pond, that no concrete or other impermeable liner was constructed when Chribran built the earthen dam [that] holds the pond. Therefore, I conclude that the source of the upwelling water in the lower elevations of [the subdivision] and at my home is the nearby Chribran pond.

While the Palmas recognize that Joe is not a trained geologist, they contend that the excess water on their property is logically traceable to Chribran's construction of the pond, and that general experience and common sense established, within a reasonable degree of probability, the relation-

ship between the pond and the appearance of excess water on their lot.

While proof other than expert testimony is allowed in some situations, the cases the Palmas cite do not involve a layperson testifying about how fluids migrate below the earth's surface.[3] Since Joe's opinion is the sole opinion contained in the summary-judgment evidence on the element of cause-in-fact, an element that all of his claims share, we must determine whether Joe's lay opinion constitutes any evidence that would support his claim that Chribran's pond had caused their damages.

Given the location of the Palmas' lot, the water from Chribran's pond would necessarily be required to travel a distance of approximately three football fields to migrate to the Palmas' lot, or to otherwise have caused an effect on the water table over that same distance. While laypersons certainly know that water flows downhill, whether water continues flowing downhill after being absorbed into the ground is not a matter that is apparent or within the common experience of laypersons. Nor does a layperson's general experience and common knowledge extend to determining how water travels beneath the ground over the distance that is involved here. Finally, laypersons do not possess a general understanding of where the water tables are located under property nor how adding water to one end of the table might affect areas elsewhere. Under the circumstances presented here, we conclude that the subject of how water travels after being absorbed by the ground and the subject of how water that the ground absorbs affects the water table are subjects beyond the general understanding and common knowledge of lay witnesses.

Additionally, the Palmas' evidence fails to demonstrate a close connection between

3. The cases on which the Palmas rely concerning lay opinion are *Guevara v. Ferrer*, 247 S.W.3d 662, 667–70 (Tex.2007) (holding that non-expert evidence of the plaintiff's state of general health before the wreck as compared to his physical condition afterwards was sufficient to allow a layperson of common knowledge and experience to conclude that his wreck made it necessary to transport the plaintiff to an emergency room and be physically examined while there); *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 733 (Tex. 1984) (lay testimony held sufficient to establish causation where record established that the plaintiff, before being exposed to fumes, had been in good health, but after a period of four or five days of constant exposure, developed symptoms such as watering eyes, blurred vision, headaches, and swelling of breathing passages); *Hood v. Phillips*, 554 S.W.2d 160, 165–66 (Tex.1977) (noting that in medical malpractice cases, unless the mode or form of treatment is a matter of common knowledge or within the layman's experience, expert testimony is required to prove that the physician has undertaken a mode of treatment that a reasonably prudent physician would not have undertaken under similar circumstances); *Lenger v. Physician's Gen. Hosp., Inc.*, 455 S.W.2d 703, 706, 708 (Tex. 1970) (noting rule that jurors can decide some questions of causation based on their common experience, but then rejecting plaintiff's argument that the jury should be permitted to decide whether eating after surgery had caused the plaintiff to suffer post-surgical complications); *Ins. Co. of N. Am. v. Kneten*, 440 S.W.2d 52, 53 (Tex.1969) (in a workers' compensation case, holding that prompt onset of heart attack within a few minutes of electric shock allowed laypersons to infer that a heart attack was related to an on-the-job injury in a case where a physician testified that the incident could have precipitated the heart attack); *Parker v. Employers Mut. Liab. Ins. Co. of Wis.*, 440 S.W.2d 43, 46 (Tex.1969) (noting in a workers' compensation case that, while causation can be determined by juries where general experience or common sense allow reasonable persons to know or anticipate that an event is generally followed by another event, laypersons did not have such general knowledge or experience in a case concerning the causation of cancer); *Choice v. Gibbs*, 222 S.W.3d 832, 836–37 (Tex.App.-Houston [14th Dist.] 2007, no pet.) (expert medical testimony not required to establish that plaintiff was damaged when plaintiff experienced prompt onset of symptoms following his suffering an electrical shock).

the filling of the pond and the problems the Palmas experienced on their lot. The Palmas purchased the property in 2005, and Joe's affidavit reflects that he first noticed water weeping from expansion joints in the streets "almost immediately after" they purchased their home. The summary-judgment record is silent about the water conditions existing on the Palmas' lot before Chribran's construction of the pond. As a result, Joe's affidavit, stating that he first noticed the water seeping from the joints in streets and driveways shortly after purchasing the home, fails to shed light on whether a temporal connection exists between the pond's construction and the water on the Palmas' lot.

For these reasons, we conclude that the Palmas were required to present expert testimony to establish that a fact issue existed with respect to whether the construction of the pond was the cause-in-fact of the excessive water on their lot. After the Palmas filed their summary-judgment response, Chribran lodged objections to Joe's affidavit on the basis that the opinions he offered were not based upon general experience and common sense. Approximately four months passed between the date that Chribran lodged its objections to Joe's affidavit and the date that the trial court granted Chribran's motion for summary judgment. Thus, the Palmas had ample time to supplement the record with competent summary-judgment evidence of causation prior to the trial court's resolution of the motions if such evidence existed.

In summary, Joe's opinions on causation are not supported by a proper basis and thus are wholly conclusory; therefore, his opinions cannot be considered probative evidence. *City of San Antonio v. Pollock*, 284 S.W.3d 809, 818 (Tex.2009) (concluding that if basis offered for an opinion provides no support, "the opinion is merely a conclusory statement and cannot be considered probative evidence"). The summary-judgment record contains no evidence from an expert in the field of hydrology[4] or from an expert qualified in any other scientific field relevant to the study of the underground movement of water. Because the Palmas failed to establish the existence of a genuine issue of material fact as to causation, the trial court properly granted Chribran's no-evidence motion for summary judgment. *See Mack Trucks*, 206 S.W.3d at 583–84 (rendering judgment for the defendant where lay testimony failed to raise a fact issue as to cause-in-fact).

### Conclusion

The Palmas produced no competent evidence proving that water in Chribran's pond had caused their damages. Because causation is a required element of each of the Palmas' claims, the trial court properly granted Chribran's no-evidence motion for summary judgment. We overrule each of Palmas' six issues and affirm the judgment of the trial court.

AFFIRMED.

---

4. "Hydrology" is "a science dealing with the properties, distribution, and circulation of water; *specif:* the study of water on the surface of the land, in the soil and underlying rocks, and in the atmosphere, particularly with respect to evaporation and precipitation[.]" *Webster's Third New International Dictionary* 1109 (2002).