

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00181-CV

PETER PAYNE, MARY BETH
PAYNE, DAVID HOWARD,
OKSANA HOWARD, MELVIN
HARRIS, DONNA HARRIS AND
CHRISTINA CHILDERS

APPELLANTS

V.

J. BAKER CORPORATION
FORMERLY KNOWN AS LITTLE
ELM/2000, LTD., LANDSTAR
HOMES DALLAS, LTD., GCS
TRAILS OF FRISCO, L.P. D/B/A
THE TRAILS OF FRISCO GOLF
CLUB AND SUN DEN FRISCO
INVESTMENT, L.P. D/B/A THE
TRAILS OF FRISCO GOLF CLUB

APPELLEES

----------

## FROM THE 431ST DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

---
[1]*See* Tex. R. App. P. 47.4.

## I. Introduction

In four issues, Appellants Peter and Mary Beth Payne, David and Oksana Howard, Melvin and Donna Harris, and Christina Childers (collectively, the Homeowners) appeal the trial court's summary judgments for Appellees J. Baker Corporation formerly known as Little Elm/2000, Ltd.; Landstar Homes Dallas, Ltd.; GCS Trails of Frisco, L.P. d/b/a The Trails of Frisco Golf Club; and Sun Den Frisco Investment, L.P. d/b/a The Trails of Frisco Golf Club (collectively, the Developers).[2] We reverse and remand.

## II. Factual and Procedural Background

The Homeowners live in the Eldorado Estates subdivision of Little Elm. Cottonwood Creek, a natural creek, is adjacent to the Homeowners' properties and separates their rear property line from the Trails of Frisco Golf Club golf course, which includes part of the creek. The Homeowners filed suit in June 2011 against the Developers and Highland Homes—their homebuilder—alleging causes of action for violating water code section 11.086, negligence per se under section 11.086, and common law negligence against all of the defendants.[3]

All of the defendants filed no-evidence motions for summary judgment. The Homeowners filed a consolidated response with the affidavit of their expert

---

[2]The Developers are two subdivision developers (J. Baker and Landstar) and two golf course owners (GCS and Sun Den).

[3]The Homeowners also sued Highland Homes for breach of warranty, breach of contract, violations of the Deceptive Trade Practices Act, and fraud, among other claims.

witness, licensed professional engineer Ralph Mansour,[4] and accompanying exhibits and moved for a continuance of the motions' submission date. The trial court denied the continuance as "untimely" and granted each of the Developers' motions. After the trial court granted the Developers' motion to sever the remaining claims against Highland Homes, this appeal followed.

### III. Jurisdiction

In their first issue, the Homeowners argue that the trial court did not grant summary judgment as to all of their claims against Landstar and that they still have a negligence cause of action pending against Landstar in the trial court, depriving us of jurisdiction. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001) ("[T]he general rule, with a few mostly statutory exceptions, is that an appeal may be taken only from a final judgment.").

Landstar's motion for summary judgment reflects that it moved for summary judgment against the Homeowners "on all claims asserted against Landstar, specifically relating to violation of Texas Water Code §11.086 and negligence." In the motion, Landstar argued that the Homeowners had no evidence that it had diverted or impounded water from the creek or that the diverted or impounded water had overflowed onto the Homeowners' property;

---

[4]In his affidavit, Mansour, a geotechnical and structural engineering expert, stated, among other things, that diverted surface water was "eroding of [sic] the supporting soils to Plaintiffs' property, and . . . causing the areas behind the back yards of the plaintiffs' homes to subside, which in turn is causing movement beneath Plaintiffs' patios, fences, and in some instances[,] Plaintiffs' homes."

that section 11.086 does not apply to omissions and failing to build a retaining wall "is a non-action that cannot be the basis for liability under § 11.086"; that the occurrence of soil erosion to a creek bank located exclusively on property that is not owned by the Homeowners or Landstar cannot be the basis of liability under section 11.086; and that Landstar could not have performed erosion control work on the creek bank behind the Homeowners' property without trespassing onto property owned by the Golf Course. In its conclusion, Landstar specifically stated that the Homeowners had "no evidence to support any of the allegations and pleadings in Count A, Count B, and Count C," which is how the Homeowners had identified the negligence per se, section 11.086, and common law negligence claims in their petition, and it requested summary judgment on all of the Homeowners' claims. The trial court's order granted Landstar's motion "in its entirety."

From this record, it appears that Landstar in fact moved for summary judgment as to the Homeowners' negligence claim, even if improperly,[5] and that the trial court granted it. And when the trial court granted the Developers' motion to sever, Landstar's summary judgment became final. Therefore, we have jurisdiction over the appeal, and we overrule the Homeowners' first issue.

---

[5]Rule 166a(i) does not authorize general no-evidence challenges or conclusory motions. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The rule requires the moving party to specifically challenge the opponent's evidentiary support for an element of a claim or defense. *Id.*

## IV. Adequate Time for Discovery

In their fourth issue, the Homeowners argue that the trial court erred by granting the no-evidence summary judgments because they did not have an adequate time for discovery.

### A. Applicable Law

As it touches on discovery for a no-evidence summary judgment motion, there is no requirement that discovery be completed; the requirement is that an adequate amount of time be allowed for discovery. *Specialty Retailers, Inc. v. Fuqua*, 29 S.W.3d 140, 145 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Whether a nonmovant has had adequate time for discovery under rule 166a(i) is case specific. *Rest. Teams Int'l, Inc. v. MG Sec. Corp.*, 95 S.W.3d 336, 339 (Tex. App.—Dallas 2002, no pet.); *McClure v. Attebury*, 20 S.W.3d 722, 729 (Tex. App.—Amarillo 1999, no pet.). In deciding whether a trial court abused its discretion by denying a motion for continuance seeking additional time to conduct discovery, we consider factors such as the length of time the case has been on file, the materiality and purpose of the discovery sought, and whether the party seeking the continuance has exercised due diligence to obtain the discovery sought. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). Further, the court may consider the nature of the case, the nature of the evidence necessary to address the no-evidence motion, and whether the movant requested stricter discovery deadlines, as well as the amount of discovery that

5

has occurred and the nature of the discovery deadlines in place. *LaRue v. Chief Oil & Gas, L.L.C.*, 167 S.W.3d 866, 872 (Tex. App.—Fort Worth 2005, no pet.).

## B. Analysis

This matter involves three causes of action filed by seven plaintiffs in June 2011 against five defendants, four of whom are involved in this appeal. In their first amended petition, the Homeowners alleged that the creek "ha[d] been subject to significant flooding and erosion" and that the Developers and Highland Homes had failed to properly protect their properties from that erosion. Specifically, they alleged that "[t]he unprotected and exposed creek bank walls have eroded and continue to erode[,] causing damage to [their] properties"; that the Developers and Highland Homes's "actions and/or inactions have resulted in damages"; and that the Developers and Highland Homes's "actions and/or inactions have resulted in an alteration of the natural flow of surface waters in a manner that damaged" their properties. The Homeowners sought damages under water code section 11.086 and for negligence per se and common law negligence.

Landstar filed its answer on July 18, 2011, and J. Baker Corp. filed its answer on July 21, 2011.[6] The record does not reflect that any of the Developers filed special exceptions to the Homeowners' petition. Less than four months after

---

[6]The record does not contain GCS and Sun Den's original answer but reflects that they filed an amended answer on December 20, 2011.

answering, the Developers filed their no-evidence motions, on November 3, 9, and 18, 2011, respectively, and set them for hearing on January 6, 2012.

Under water code section 11.086(a), no person may divert or impound the natural flow of surface waters in this state, or permit a diversion or impounding by him to continue, in a manner that damages the property of another by the overflow of the water diverted or impounded. *See* Tex. Water Code Ann. § 11.086 (West 2008). Therefore, in their no-evidence motions, the Developers each argued that there was no evidence of an affirmative act to divert or impound surface water from Cottonwood Creek or that diverted or impounded water from Cottonwood Creek caused an overflow of water onto the Homeowners' properties[7] and that they had no duty to protect the Homeowners' property from the effects of erosion related to the creek.[8]

---

[7]To its no-evidence motion, Landstar attached the affidavit of Steven E. Langhoff, an executive vice president of Landstar's general partner, in which he stated that Landstar had never diverted or impounded water from the creek. J. Baker Corporation attached an affidavit by John Baker—presumably its owner—stating that J. Baker Corporation had never diverted or impounded water from the creek. And GCS and Sun Den attached the affidavit of Stephen Lee—presumably one of their corporate officers—stating that GCS and Sun Den had never diverted or impounded water from the creek and that he had never seen the creek rise to the point where it would overflow onto the Homeowners' properties. However, while a no-evidence summary judgment movant may file evidence with the motion, we may not consider that evidence "unless it creates a fact question." *Binur v. Jacobo,* 135 S.W.3d 646, 651 (Tex. 2004).

[8]Further, the Developers couched the Homeowners' claims as seeking to hold them liable for impounding or diverting water from the creek, which would not count as "surface water" under the statute. *See Raburn v. KJI Bluechip Invs.,* 50 S.W.3d 699, 704 (Tex. App.—Fort Worth 2001, no pet.) (stating that "surface waters" consist of water or natural precipitation diffused over the surface of the

7

Three days before the summary judgment hearing, the Homeowners filed a motion for continuance, requesting additional time for discovery.[9] As argued by the Homeowners, supported by the affidavit attached to the motion, and reflected in the record, the Homeowners had previously agreed to extend the discovery

ground until it evaporates, is absorbed by the land, or reaches a bed or channel in which water is accustomed to flowing). However, among the other allegations in their first amended petition, the Homeowners alleged that the Developers' "actions and/or inactions have resulted *in alteration* of the natural flow of surface waters in a manner that damaged" their properties. [Emphasis added.] *See Pasquinelli Portrait Homes-Durango Ridge LP v. Securlock at Bedford, Ltd.*, No. 02-11-00392-CV, 2013 WL 1234852, at *5 (Tex. App.—Fort Worth Mar. 28, 2013, no pet. h.) (mem. op.) (holding that if flooding was a result of diversion of rainwater "instead of, say, water overflowing from the detention pond," then appellee was not barred from asserting a claim under section 11.086). Therefore, while allegations pertaining to water already in the creek would not state a claim under section 11.086, an allegation that damages were caused by alteration of the natural flow of surface waters *before* they reached the creek would. *See, e.g., Contreras v. Bennett*, 361 S.W.3d 174, 177–80 (Tex. App.—El Paso 2011, no pet.) (holding that evidence was legally and factually sufficient to support verdict on section 11.086 claim when plaintiffs alleged that massive quantities of surface water had been unlawfully, wrongfully, and negligently diverted, retained, or impounded to spill over onto and into the plaintiffs' property, causing property damage and plaintiffs' engineering expert testified in detail about certain alterations made to the defendants' properties that diverted water toward the plaintiffs' property and caused water that should have been routed elsewhere to cross plaintiffs' property).

[9]While the Developers assert that the Homeowners waived this complaint by not timely filing their motion for continuance, the rules of civil procedure and case law do not set forth a period of time prior to submission of a no-evidence summary judgment motion by which a request for additional time for discovery must be filed, and the record does not contain any pretrial order setting forth such a deadline. *Compare* Tex. R. Civ. P. 251, *with City of Houston v. Blackbird*, 658 S.W.2d 269, 272–73 (Tex. App.—Houston [1st Dist.] 1983, writ dism'd) (overruling complaint that the trial court abused its discretion by denying motion for continuance when motion was unverified and untimely in that it was presented to the trial court on the day of the hearing for which the continuance was sought and not filed until three days later).

deadline for GCS and Sun Den, had noticed depositions of the Developers' representatives concerning factual information on the Homeowners' claims in late October, and had set the depositions for December. The Developers then moved to quash the depositions, filing their no-evidence motions within ten days later. Although the hearing on the motions to quash had originally been set for November 23, 2011, it was later reset to December 16, 2011, upon the Developers' request, and then reset again to January 20, 2012, after the date of the summary judgment hearing.

In their motion for continuance, the Homeowners asserted that quashing the depositions greatly prejudiced them because they had to

> secure sworn testimony regarding information that is critical to responding to the motion, regarding Defendants['] actions, the hydrology studies or documents they submitted to governmental agencies, applications for permits, and other important information is needed from said defendants who are unavailable for deposition until after the Court rules on the motions to quash on January 20, 2012. This information is material to the no-evidence summary judgments as they focus on defendants' actions in diverting surface waters.
>
> Further, the issues surrounding these summary judgments involve expert testimony regarding soil issues and hydrology studies that have been performed by non-parties. Plaintiffs need time to depose these individuals and retain experts.

*See Palma v. Chribran Co.,* 327 S.W.3d 866, 870–72 (Tex. App.—Beaumont 2010, no pet.) (concluding that plaintiffs were required to present testimony from a hydrology expert or other qualified expert with regard to the movement of water to support their claim under section 11.086).

9

The Homeowners also noted that they were gathering information to obtain from FEMA and the City of Frisco, via the Freedom of Information Act, documents that were material to the Developers' actions in diverting surface waters, that there was no scheduling order in the case, and that this was their first request for a continuance. To their motion, the Homeowners attached an affidavit explaining the need for the continuance, exhibits showing how long the case had been on file, the August 25, 2011 rule 11 agreement, and the November 3, 2011 letter confirming the November 23, 2011 hearing date for the motions to quash.[10]

---

[10]In their motion for reconsideration, the Homeowners added:

The changes to the flood plain in question were caused by man-made alterations to the flow of surface waters. Liability in this case will center on what Defendants knew, when they knew it, what they did about it, and whether what they did or did not do was the proper thing to do. Expert witness testimony will be a critical part of this trial. As [the Homeowners] argued in their affidavit filed in support of their motion to continue, it was vital for [the Homeowners] to take the depositions of all four defendants prior to having to respond to the MS[J], so they could determine several matters: (1) the exact scope of work engaged in by each Defendant as to hydrology studies; (2) total amount of surface water the defendants represented to the government they were diverting into the flood plain; (3) []to identify agencies or individuals who performed those studies on behalf of the builder and developer, and (4)[] obtain governmental documentation regarding permits and requested authority to add fill on various lots and to change the flood [plain] requirements to reflect added change on the ground.

At the hearing on the motion for reconsideration, the Homeowners argued that the "depositions would have been critical to formulating a proper[,] well[-]defined Freedom of Information Act request" because the Developers had made representations to FEMA about how their developments would affect flooding.

10

The record is incomplete with regard to the amount of discovery that had occurred by the time the trial court granted summary judgment. The record contains the August 25, 2011 rule 11 agreement between the Homeowners and GCS and Sun Den in which the Homeowners agreed to give GCS and Sun Den until September 16 to respond to discovery, but the nature of the discovery is not discussed. On November 14, 2011, GCS propounded written discovery to each of the Homeowners—seven sets of interrogatories, seven sets of requests for production (with several duplicate requests), and four sets of requests for disclosure. And as previously set out, the Homeowners had noticed depositions of the Developers' representatives, but these were met with motions to quash that were ultimately set to be heard after the summary judgment hearing. And while the Developers sought to quash their representatives' depositions, representatives of each of the Developers signed affidavits that were attached in support of their respective no-evidence motions.

Finally, the record reflects that no pretrial order involving discovery or a discovery control plan was in place and that the Homeowners had requested a Level 3 discovery control plan in their first amended original petition. *See* Tex. R. Civ. P. 190.4(b) (stating that "the discovery limitations of Rule 190.2 [Level 1], if applicable, or otherwise of Rule 190.3 [Level 2] apply unless specifically changed in the discovery control plan ordered by the court"). Because the Homeowners did not affirmatively plead for the amount of monetary relief set out in rule 190.2, and the trial court had not ordered a discovery control plan, Level 2 discovery

11

applied.[11]  *See* Tex. Sup. Ct. R. 190.2(a)(1) (West 1998, superseded 2013), *available at* http://www.supreme.courts.state.tx.us/MiscDocket/98/98-9196.pdf (stating that Level 1 discovery applies to any suit in which all plaintiffs affirmatively plead that they seek only monetary relief aggregating $50,000 or less, excluding costs, pre-judgment interest, and attorneys' fees).

A Level 2 discovery period ends thirty days before the date set for trial, or "nine months after the earlier of the date of the first oral deposition or the due date of the first response to written discovery." Tex. R. Civ. P. 190.3(b)(1)(B)(i)–(ii). The record does not reflect that a trial date had been set. The due date for written discovery propounded by the Homeowners prior to agreeing to an extension with GCS was September 2, 2011, and if the depositions sought by the Homeowners had not been quashed, the earliest deposition date would have been December 2, 2011. Therefore, under rule 190.3, the discovery period in this case would have ended—at the earliest—nine months after September 2, 2011. *See id.*

Because both the case and the no-evidence motion had only been on file for a short time, the discovery sought was material to defeating the Developers'

---

[11]We note that on February 12, 2013, the supreme court issued an order rewriting rule 190.2(a)(1) to reflect that Level 1 discovery applied to answer any suit governed by the expedited actions process in rule of civil procedure 169. *See* Misc. Docket No. 13-9022 (Tex. Feb. 12, 2013, order), *available at* http://www.supreme.courts.state.tx.us/miscdocket/13/13902200.pdf. However, the order provides that rule of civil procedure 169 and the amendments to rule 190 apply to cases filed on or after March 1, 2013, except for those filed in justice court. *Id.* Because the Homeowners filed suit in the district court in June 2011, we apply the earlier rule.

summary judgment grounds, the motions to quash the depositions of the Developers' representatives had not yet been heard, and the discovery deadline under Level 2 had not yet passed, we conclude that the trial court abused its discretion by denying additional time to the Homeowners to conduct discovery to address the no-evidence motions, and we sustain their fourth issue.[12]  *See Joe*, 145 S.W.3d at 161; *LaRue*, 167 S.W.3d at 872; *cf. Palma*, 327 S.W.3d at 868, 872 (affirming summary judgment on section 11.086 claims when developer filed no-evidence motion approximately twenty-one months after plaintiffs filed suit when plaintiffs failed to present expert evidence regarding causation).  Based on our resolution here, we need not reach the Homeowners' remaining issues.  *See* Tex. R. App. P. 47.1.

---

[12]The Developers cite *Restaurant Teams* and *McClure* to support their argument that the amount of time here was adequate, but these cases are inapplicable.  In *Restaurant Teams*, while the court held that the seven months that the case had been on file at the time the motion was filed constituted an adequate time, the claims at issue—breach of contract, fraud, and unjust enrichment—required no more "than minimal discovery, if any discovery at all," to defeat the no-evidence motion.  95 S.W.3d at 339–40.  In *McClure*, another case holding that the seven months the case was on file at the time the motion was filed was adequate, the nonmovant offered no affidavit to explain why he needed more time and the threshold question was one of deed construction, for which "discovery requirements would be minimal."  20 S.W.3d at 729–30.

## V. Conclusion

Having overruled the Homeowners' first issue and sustained the Homeowners' fourth issue, we reverse the trial court's judgment and remand the case to the trial court.

/s/ BOB MCCOY
BOB MCCOY
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT, and MCCOY, JJ.

DELIVERED:  May 16, 2013